```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------x
In Re:                              Case No.:1-19-11441-CLB
                                    Chapter 13
     Shane Christopher Buczek       SSN:  xxx-xx-5635

                     Debtor,        Buffalo, New York
---------------------------x        July 27, 2020
```

**DIGITALLY-RECORDED HEARING**


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CARL L. BUCKI
                UNITED STATES BANKRUPTCY JUDGE



```
FOR DEBTOR:            SHANE CHRISTOPHER BUCZEK, Pro Se
(Via telephone)        435 Creekside Drive
                       Suite 200
                       Amherst, New York 14228

FOR CREDITOR:          VIKRAM VILKHU, ESQ.
(KeyBank)              FEIN, SUCH AND CRANE, LLP
(Via telephone)

                       JULIE PHILIPPI, TRUSTEE
                       Chapter 13 Trustee
                       170 Franklin Street
                       Suite 600
                       Buffalo, New York 14202
                       BY:  JANET MacDONALD, ESQ.
```




```
TRANSCRIBER:     Diane S. Martens
                 dimartens55@gmail.com
```

In Re Shane Christopher Buczek – 19-11441

1              P R O C E E D I N G S

2

3              **THE COURT:**  This brings us to Shane Christopher

4    Buczek.

5              Can I have appearances, please.

6              **MR. BUCZEK:**  Shane Christopher Buczek.

7              **MR. VILKHU:**  Attorney Vilkhu on behalf of Fein,

8    Such & Crane and the creditor.

9              **THE COURT:**  Who was that, again?

10             **MR. BUCZEK:**  Yes.  Vikram Vilkhu appearing on

11   behalf of Fein, Such & Crane.

12             **THE COURT:**  Thank you for coming.

13             Who else do we have?

14             **MR. VILKHU:**  Thank you, your Honor.

15             **MS. MacDONALD:**  Janet MacDonald for the Trustee.

16             **THE COURT:**  All right.  And who else do we have?

17             (No response.)

18             **THE COURT:**  All right.  We have three matters on

19   this morning.  I think it'd be best if I start with the

20   motion to compel the Trustee to administer assets.

21             And that's your motion, Mr. Buczek.  So why don't

22   you speak just to that.

23             **MR. BUCZEK:**  Yes, your Honor.  I know we had a

24   couple conversations before back in January and just recently

25   regarding the birth certificate and the accusive (phonetic)

1  and you did mention to me that I might be in the wrong court,

2  if you remember that back in January.  We had a just a brief

3  discussion.

4         And so I've been thinking about this over the last

5  several months and in reading the duties of the Trustee, I

6  went ahead and put that motion to compel the Trustee to go

7  after that asset.  Now, in reality, if that's going to take

8  place, it's been undecided.  So I wanted to push that, if

9  that's a possibility.  I know it sounds very crazy and it's

10 something that's probably never been addressed by the Court

11 but it's very real.

12        And, you know, I'm just going to go back to 2010

13 when I had a trial in front of Judge Skretny.  We had a

14 depository trust clearinghouse, Joseph Kelly, risk management

15 department talking about the accusive, the birth certificate,

16 the assets and debtor/creditor situations.  So, all I can do

17 is -- there was no attempt to get the Trustee really wound up

18 here and I didn't expect that motion for her to dismiss the

19 case.  My whole thing was to go after the assets.

20        And nobody ever talks about -- people live their

21 whole life not talking about this stuff.  But it's very real.

22 It's true.  But getting somebody to do that is really unheard

23 of and so I wanted to throw this out there that I'm not here

24 to get the Trustee upset because her motion was -- you could

25 see her motion response was on fire and I wasn't expecting

In Re Shane Christopher Buczek – 19-11441

1    her to try to dismiss the case.

2           So, leaving that aside, that's the only reason why

3    I filed it.  I'm not the Trustee so I did file those

4    subpoenas which was -- there was a deficiency notice, I can

5    clear that up at a later time.  I'm not asking for legal

6    advice but it's my opinion -- I'm not sure if you got an

7    opportunity to read my response back regarding the duties of

8    the Trustee to go after any assets that I believe that is out

9    there.

10          And I did, there's a lot of reading here but I just

11   tried to put as much stuff in the record to prove my point

12   that it's, it's out there and all I can do is ask the Court

13   to at least try to go after the accusive number and the

14   assets that's sitting there and I put an enormous amount of

15   work to get an accusive.  Leaving aside -- I never even

16   brought up the Social Security, passport, driver's license,

17   anything like that.  I just was focused on the birth

18   certificate and bringing in the subpoena I did file which was

19   defective and I can fix that at a later time.  I'm not really

20   sure if that's my responsibility but I went ahead and did it

21   anyways.

22          I've already had communications with Fidelity, the

23   chief financial officer, the DPC, depository clearinghouse at

24   55 Water Street in New York City.  I didn't talk to the chief

25   financial directly but I did talk to one of their agents over

1   the phone about performing these duties and going after the

2   accusive.  But Joseph Kelly was in risk management way back

3   in 2010 and Judge Skretny's transcripts -- there's so much to

4   tell you about this and I don't want to drag this out too

5   long.  But this stuff is real.  Getting the Trustee to do it

6   would be something that's really unheard of.  There is no

7   case law on it.  I went to LexisNexis, Thomson Reuters, went

8   everywhere.  There's nothing.  I think that the ones that

9   have -- been successful at it, they're not going to put that

10  on the record.  They're not going to report that stuff.

11          All I can do is ask the Court kindly to at least

12  look into it and that's, that -- that I wasn't there to get

13  the Trustee, how do I say it, it wasn't like I was throwing a

14  dart.  I was just trying to move the Court or move the

15  Trustee to, hey, we have an asset here, let's go after it.

16          And there is also an issue in her response back

17  that the government never filed a claim against me and

18  there's two mortgages that are still pending in the appellate

19  court that have not been resolved.  A brief has been filed

20  with Nationstar.  KeyBank is pending to be filed and that

21  right there, those two briefs.

22          And then, your Honor, I'm not sure if you know this

23  or not but I did, I raced down to the courthouse around 7:30

24  this morning and filed my adversary proceeding regarding

25  KeyBank.  And the reason why I did that is because I'm trying

Case 1:20-cv-01046-JLS   Document 4   Filed 02/12/21   Page 6 of 39

1  to force Fein, Such & Crane, David P. Case, to produce the

2  original documents, which I know they don't have, so I have

3  to make a record of that.  And I'm not trying to be

4  redundant.  He said, oh, you're bringing this up again,

5  you're bringing this up again.  I'm trying to find a way of

6  properly doing it.  It's like walking over a river and if you

7  step on the wrong piece of wood, you go right straight

8  through and you're done.

9       So I'm trying to do this properly and all I'm

10 trying to do is somewhere along the line establish on the

11 record that there is no outstanding obligations regarding

12 KeyBank.  That's why I put that motion for sanctions together

13 which is we're not addressing that this very second but I'm

14 just trying to very carefully have the Trustee at least look

15 into it.  Everything I possibly can put together I put in

16 there.  I might have overdid it.  But the reason why I

17 overdid it cuz nobody, nobody's ever brought this up before.

18 I don't think it's ever been brought up with you, Judge, as

19 far as I know.

20      But the one thing I want to tell you before I let

21 the Trustee speak is Judge Skretny questioned the depository

22 trust clearinghouse Joseph Kelly regarding the birth

23 certificate and the accusive number and he would not answer

24 the question.  And the judge said, Judge Skretny said you

25 have to answer it and he, he said -- then he finally answered

In Re Shane Christopher Buczek - 19-11441

1    and he goes:  I don't know.  So he would not really address

2    the issue of the asset, length of the accusive number and how

3    they sell our original documents as a security, just like

4    they do with the mortgages, auto loans, airplanes, the list

5    goes on.  I mean, there's -- we're talking about tril --

6    billions and trillions of dollars being made on these

7    securities.

8            So, he asked Anna Medlock (phonetic) from the IRS

9    that was in charge of 300 IRS agents.  This is -- he is Judge

10   Skretny and Mrs. Medlock came back and Judge Skretny asked

11   several questions.  The one that really stuck out the most.

12   He said Mrs. Medlock what is accepted value mean to you, what

13   does it really mean to the Internal Revenue Service?  And she

14   quietly whispered into the microphone and said it means

15   money.  It means money or something like that.  And Judge

16   Skretny was kind of stunned that she said that and he says,

17   okay, let's carry on with the trial.

18           Right there and then I should have been held

19   innocent and the whole case thrown out.  Unfortunately,

20   nobody understand what she just said.  I think you, Judge,

21   understand what she said.  I think Judge Skretny understood.

22   I clearly understood what was going on.  And the reason why

23   I'm bringing that up, it goes back to the accusive number.

24   It goes back to the prepaid treasury account which is called

25   the treasury tax law account.  There's -- and when we pass

In Re Shane Christopher Buczek - 19-11441

1  away -- I don't want to pass away for a long time because I

2  love being here -- but when we do, that security it's

3  liquidated and it goes back to the federal government.  What

4  they do with it, I don't know.

5          So I'll leave, I'll rest on that, Judge.

6          **THE COURT:**  All right.  Let me hear, then, from

7  Ms. MacDonald.

8          And, Ms. MacDonald, I will take up your motion for

9  dismissal last but right now just speak, if you could, to the

10  motion to compel by Mr. Buczek.

11          **MS. MacDONALD:**  All right.  Your Honor, Janet

12  MacDonald for the Trustee.  The debtor here apparently seeks

13  to have the Trustee liquidate what he believes to be an asset

14  in this case.  There's no basis in law for what he's

15  requesting.  Section 1302(b)(1) specifically excludes from

16  the Trustee's duties the duty to collect and reduce to money

17  property of the estate.  That's provided for in 11 U.S.C.

18  Section 704(a)(1).  This debtor proceeds here in Chapter 13.

19  Even were he in Chapter 7, the Trustee has discretion and

20  judgment and in this case the Trustee has no desire and no

21  obligation to liquidate what the debtor believes to be an

22  asset.

23          **THE COURT:**  All right.  Mr. Vilkhu, do you have

24  any -- I don't think you have a say in this first motion but

25  I don't want to --

In Re Shane Christopher Buczek - 19-11441

1          **MR. VILKHU:**  No.

2          **THE COURT:**  -- exclude you.

3          **MR. VILKHU:**  I think you're right, your Honor, and

4  I thank you for your time but I think the Trustee said it

5  all.

6          **THE COURT:**  I'm going to deny Mr. Buczek's motion.

7  Ms. MacDonald is absolutely right:  The duties and

8  responsibilities of a Trustee include -- the duties and

9  responsibilities include some of the responsibilities of a

10  Chapter 7 Trustee but specifically excluded from that is any

11  obligation to liquidate and turn into cash assets of the

12  estate.  And so the Trustee, the Chapter 13 Trustee, has no

13  responsibility for what the motion seeks to compel and,

14  therefore, the motion is denied.

15          Let's now turn to the motions for sanctions as well

16  as the cross-motion.  Mr. Buczek, that's your motion, your

17  opportunity to speak.

18          **MR. BUCZEK:**  Yes, your Honor.  I've been thinking

19  very hard in what Mr. Case wrote in his response.  There's

20  several things that I totally disagree with but one thing I

21  want to mention is Governor Cuomo did pass that law back in

22  January about standing and how standing can be challenged at

23  any time.  I'm sure you're familiar with that.  And I know

24  this is a federal court.

25          (Extraneous noise.)

In Re Shane Christopher Buczek - 19-11441

1      **MR. BUCZEK:**  I'm sorry.  Judge, did you say

2  something?

3      **THE COURT:**  No, I didn't.  I'm listening to you

4  carefully.

5      **MR. BUCZEK:**  Oh, I thought you were going to say

6  something.

7          So Governor Cuomo made a -- amended the residential

8  properties, you can challenge standing any time even after

9  the sale of the property.  And I put that in there and that's

10  all been in front of Judge Sheila DiTullio -- actually not me

11  but it would be my mom's case.  But that, that that's a big

12  issue and why I say I really thought about it, really thought

13  about it and I says I need to go to adversary proceedings to

14  get some true answers here about the subpoenas and this has

15  nothing to do with the accusive, just basically producing the

16  original documents, the true accounting and that's why I

17  filed the adversary proceeding.  I know you didn't get a

18  chance to review it but -- and I'm sure if this Court is

19  going to litigate this -- by the way did you, if I can put

20  this on the record, it's 20/10120 slash one -- 01035, I was

21  just wondering if you had an opportunity to get notice that

22  that was filed this morning.

23      **THE COURT:**  That's the first thing I was told when

24  I walked into my office.

25      **MR. BUCZEK:**  Okay.  And so I'll -- I guess I'll let

In Re Shane Christopher Buczek - 19-11441

1   that right there dictate the motions for sanctions.  I don't

2   want to be redundant and use the Court's time.

3           So, I don't know how to properly say this but this

4   is a last minute decision and I think it might be a good idea

5   to possibly, with the permission of the opposing party and

6   the Court, is to withdraw that motion and follow suit with

7   the adversary proceedings.  I think that because all the same

8   issues are in the adversary proceedings and this was a last

9   minute decision because I'm having a very difficult time

10  getting that subpoena enforced against Mr. Case and Fein,

11  Such & Crane regarding KeyBank.  And I, you know, I guess

12  I'll leave it with the adversary proceeding with the

13  permission of the Court and the opposing party.

14          **THE COURT:**  We also have a cross-motion that I have

15  to give consideration to so I can't just allow this to be

16  withdrawn when I have a cross-motion.

17          **MR. BUCZEK:**  Oh, okay.  You're correct on that, I

18  forgot all about that.

19          **THE COURT:**  All right.

20          **MR. BUCZEK:**  Well --

21          **THE COURT:**  Go ahead.

22          **MR. BUCZEK:**  I, I -- everything's, everything --

23  I'll carry it through.  I did the 21 days.  I did it

24  certified mail.  It was never corrected.  I might as well go

25  ahead and get right into it but the proof of claim that was

In Re Shane Christopher Buczek - 19-11441

1    filed, I'm sure you're aware of this, proof of claim clearly

2    states that I have a loan with KeyBank.  And that's not true,

3    Judge, I don't have a loan with KeyBank.  And, in fact, it

4    was -- I believe it was signed by, I think it was signed by

5    one of the bankruptcy senior advisers with KeyBank in Ohio.

6    The name's -- her name's Christine and I believe her last

7    name is Banaszak, B-A-N-A-S-Z-A-K, I believe, and she

8    actually did a proof of claim and signed it and filed it into

9    the record which is one of the -- it's in the exhibit, by the

10   way, for the motions for sanctions and then Santiago.  I

11   forget -- her first name starts with a G, her last name is

12   spelled S-A-N-T-I-A-G-O.  She did a notice of mortgage

13   payment that I have some kind of obligation to some kind of

14   loan which I don't.

15          And my argument is that once I did the quitclaim

16   back in 2017, there was to obligations because we already

17   talked to Judge Thomas Franczyk regarding the subpoenas and

18   we were ready to do it and have a hearing on that and at the

19   very last minute he retired and he gave that over to Judge

20   Colavecchia (phonetic) and Colavecchia just ignored it and

21   here we are today in bankruptcy court.  I cannot get anybody

22   to force the opposing party to establish the note.

23          And you know my thoughts on it, Judge.  We went

24   through this over and over and over and over again and they

25   don't have the note.  They never had it.  It's been gone and

1   I did establish on the record regarding the accusive how that

2   was sold, that clearly shows it's gone.  It's been gone for a

3   very long time.  It's a very interesting discussion but it's

4   clearly laid out and I followed the rules this time.  I gave

5   them 21 days to fix it pursuant to the rule and I'm not sure

6   if you had an opportunity to read it.  It's a quite lengthy

7   motion for sanctions against Mr. Case and then he came back

8   with a cross motion which I did respond.  Hopefully it's up

9   on Pacer by today.  I'm not sure if you had the opportunity

10  to at least review it but everything is clearly spelled out.

11          So all I'm doing is he filed sanctions against me,

12  your Honor.  I established filing sanctions against him and

13  it feels like, to me, I feel like that I'm, I've been -- I

14  feel like I'm getting kicked, like I have a sticker on my

15  back, kicked like George McFly from *Back to the Future*.

16  That's how I feel sometimes.  It's like whatever I say,

17  whatever I do, it's like nobody hears me.  It goes in one ear

18  and out the other and I constantly get kicked around and it's

19  really depressing actually.  It's like why am I even

20  bothering going to bankruptcy court.  Well, what I'm trying

21  to do is establish some kind of debt.

22          If there's a debt at large in my plan that I can

23  fulfill, I'll gladly pay it but that has not been produced.

24  There's nothing regarding any type of obligation to KeyBank

25  and the proof of claim.  And they actually signed it under

In Re Shane Christopher Buczek - 19-11441

1   penalties of perjury, the officer for KeyBank, that I

2   actually have a loan for KeyBank, I mean, how do you get

3   around that one?  To my understanding there's criminal

4   penalties attached to that if you do that.  You know it.  The

5   opposing party knows it, I know it.  I never had a loan with

6   KeyBank.  All I can do is rest on the entire motion that I've

7   filed.  I don't want to sit here and eat the Court's time up

8   and start reading this whole thing into the record.  But

9   everything I do is I do under penalties of perjury.  I'm

10  trying to be, I'm trying to do, you know, do the CliffsNotes

11  of the motion -- of the actual motion for sanctions.  That's

12  all I can really say.  You know all the facts.

13          The opposing party knows all the fact but they

14  continuously claim that they have the -- that I continuously

15  try to attack the legalities of the note and the security

16  instrument that provides a secure creditor's right to

17  encumber the foreclosure upon real property which we already

18  know that's not true.  And then sometimes they like to sign

19  under penalties of perjury and their response is quite

20  lengthy but the thing is it means nothing when you have no

21  standing.  They've never had any standing.

22          And Thomas Franczyk was going to set up a hearing

23  to establish the note and then at the last minute he

24  disappeared.  And I think he retired, though, but they sat on

25  that thing for months, almost a year actually.  And they

In Re Shane Christopher Buczek - 19-11441

1  refused to address the setting up.  We tried to get a hearing

2  date but they just wouldn't give it to us.  And as you are

3  well aware, he retired, your Honor, back in December of 2017

4  and it went to Judge Colavecchia in January of 2018.  I'm

5  sure you're aware of that, correct?

6          **THE COURT:**  Yes, I am.

7          **MR. BUCZEK:**  Okay.  Without keeping you listening

8  to me and all that, you know all the facts.  I don't want to

9  repeat things over and over and over and over again but they

10  don't -- they will not establish the note.  If there's

11  something there that needs to be paid off, I'll gladly pay

12  for it.  Unfortunately, the note has been gone for the

13  longest time and we've made several responses even way back

14  in 2014, they -- no answers but that was concerning my mom's

15  case way back then.

16          Now I'm trying to establish some kind of, some kind

17  of debt.  So I'm just going to focus on the proof of claim,

18  the notice of mortgage payment and they're claiming I have a

19  loan with them and I have no written contracts with KeyBank.

20  I've never had.  And they keep on saying that they're

21  secured -- which they're not.  I don't know what else to do.

22  So that's the reason why I filed the sanctions against

23  Mr. Case.

24          And I think you had an opportunity to review the

25  motions for sanctions and I do want to make something really

In Re Shane Christopher Buczek - 19-11441

1    clear to you and I gave him the 21 days to respond and he

2    never did.  I sent it by certified mail.

3           **THE COURT:**  Well, let me hear from, at this point

4    let me hear from Mr. Vilkhu.

5           **MR. VILKHU:**  Thank you, your Honor.  Vik Vilkhu,

6    Fein, Such & Crane.

7           Your Honor, I'm a partner of the firm of Fein,

8    Such & Crane.  Mr. Case wasn't available today so I've taken

9    this case.  I'm very familiar with the underlying salient

10   facts.

11          I guess the first thing I would say, your Honor, is

12   that, as the debtor has noted, he filed a motion or a

13   complaint, that is about an hour ago, at least that is what

14   it bears on Pacer when I pulled it this morning.  And every

15   single one of the allegations there had been made in previous

16   applications to this court, which underline the fact -- the

17   arguments made in Mr. Case's cross-motion.

18          The fact of the matter is that this is the at least

19   the fifth time the issues related to the foreclosure and the

20   issues that have been underlying this bankruptcy have been

21   litigated before this Court.  The issues related to this

22   foreclosure, this Court has ruled previously that these are

23   state court matters and this court was not going to posit any

24   sort of opinion or decision in regards to those in rem

25   proceedings.

In Re Shane Christopher Buczek - 19-11441

1        I would also note that there has been a default in
2   the cross-motion response.  My office filed a cross-motion.
3   There has been a default in responding to that motion.  Now
4   I'm sure the debtor will advise that he filed something this
5   morning I think at 9 a.m. or 8 a.m. in the morning but that
6   is, by definition, a default so there really is no opposition
7   before this court against my office's cross-motion for
8   sanctions.
9        You know this Court has wrestled with these issues
10  for quite some time, as has the Trustee, I imagine.  And the
11  crux of my office's motion and cross-motion is that this
12  conduct by debtor is the very definition of frivolous.  This
13  is a unique case -- not unique for the legal issue that it
14  presents in terms of the foreclosure but in terms of the
15  manner in which the litigation has proceeded.
16       There have been a total of two attorney grievances
17  filed against my office, two attorneys have been personally
18  sued by debtor.  There have been CSB (phonetic) complaints
19  filed against my client and each of these allegations have
20  required responses.  They have required representation.  They
21  have required the time and attention of seasoned attorneys to
22  respond to.  And I would note that every single one of these
23  allegations have been and barbs levied against both my
24  clients, the person, practices of people in my office have
25  resulted in nothing, not a single ruling in favor of debtor

In Re Shane Christopher Buczek - 19-11441

1   or single ruling in favor -- against any member of my firm or

2   my client.

3           And, you know, the purpose of the motion for

4   sanctions is not only to compensate my office for the time

5   and expenditure to respond to these frivolous proceedings,

6   there is to appear at small claims court actions in various

7   jurisdictions, to respond to CSB complaints but also to seek

8   an injunction to prevent further allegations and further

9   complaints and further expenditures to be made by my office

10  to defend itself against the frivolous claims of defendant.

11          You know, if you look at the contents -- even if

12  the court is going to acknowledge the untimely nature of the

13  complaint filed this morning and the allegations contained

14  therein, they're largely the parroting, and regurgitation of

15  arguments previously made.  So even if they're untimely, they

16  are on their face deficient.  There are actually zero

17  particularities described in terms of fraud.  There are a

18  series of ad hominem attacks against individuals who work for

19  the firm on behalf of a creditor who has filed secured claim

20  in their proof of claim.  And the issues related to

21  foreclosure again are state matter proceedings and this Court

22  has made that clear.

23          And, you know, my office seeks relief from this

24  Court -- and I use the word relief both in a legal sense but

25  also in a lay sense -- that this matter has proceeded far

In Re Shane Christopher Buczek - 19-11441

1   enough and my client and my office have been compelled to

2   expend sums of money and time to defend itself against a

3   series of repetitive and frivolous ad hominem attacks and so

4   we would ask this Court to find that the debtor has defaulted

5   as against our cross-motion, that our application for

6   sanctions is granted, in the sense that we are granted at

7   least a $750 sanction for the time to respond to these

8   proceedings; and then probably, most importantly, an

9   injunction to prevent further proceedings filed against my

10   office in regards to prosecuting a foreclosure action and

11   protecting a secured creditor in a bankruptcy proceeding.

12         Thank you, your Honor.

13         **THE COURT:**  Ms. MacDonald, did you want to be heard

14   at all on this cross-motion?

15         **MS. MacDONALD:**  No, your Honor.

16         **THE COURT:**  All right.  Let me ask one question of

17   Mr. Vilkhu.

18         To the extent that -- in a moment I'll be hearing

19   the Trustee's motion to dismiss the case.  To the extent that

20   I grant that motion -- and I haven't heard argument so I've

21   made no decision yet -- but to the extent that I grant the

22   Trustee's motion, does not your motion to restrain further

23   proceedings in this court become moot?

24         **MR. VILKHU:**  Yes, your Honor, in regards to the

25   injunction portion of our motion for sanctions, I would agree

In Re Shane Christopher Buczek – 19-11441

1   with the Court.

2           **THE COURT:**  All right.  Let me now hear from the

3   Trustee on her motion to dismiss the case.

4           **MS. MacDONALD:**  Your Honor, the Trustee moves to

5   dismiss the case for cause.

6           The case was commenced under a Chapter 13

7   July 19th, 2019.  We have yet to complete a 341 meeting,

8   notice creditors with regard to a plan or achieve

9   confirmation.  The debtor did file a plan providing for

10  payment of $95 a month.  He has made those payments.  But his

11  argument goes to the validity.  The only claims filed in the

12  case, those claims being by KeyBank and Nationstar mortgage,

13  he denied both personal liability on the claims and, if I

14  understand correctly, the validity of the lien on his real

15  property.  So there is no, no claim to be paid through the

16  plan in the event of confirmation and no purpose served by

17  continuing the proceedings here.

18          The debtor did state earlier this morning that he

19  would gladly pay any claim determined to be valid but his

20  schedules don't show income anywhere near sufficient to

21  address the claims that are filed in the case.  The mortgage

22  arrears by Nationstar is in excess of $142,000.  The arrears

23  by KeyBank are $29,000.  So, even if one of those claims were

24  allowed, he has income insufficient to fund a plan that would

25  address the claims filed in the case.

In Re Shane Christopher Buczek – 19-11441

1    I'd also move for dismissal under 11 U.S.C. Section
2  521(e)(2)(B).  The debtor has not yet submitted tax returns
3  to the Trustee.  Those were required seven days prior to the
4  first meeting of creditors.
5         **THE COURT:**  All right.
6         Mr. Buczek, it's your opportunity to respond.
7         **MR. BUCZEK:**  Yes, I want to.
8         **THE COURT:**  And respond both to the cross-motion by
9  Mr. Vilkhu, as well as to the Trustee's motion to dismiss.
10        **MR. BUCZEK:**  Okay.  Regarding the -- getting back
11  to KeyBank really quick is there is not one of the documents
12  have been filed -- by the way this is bankruptcy court.  I
13  know he keeps on saying we have to go back to state court.
14  Remember he says go back to state court.
15        They won't serve me.  They won't serve me in state
16  court.  I can't file anything in state court so that's kind
17  of a moot issue.  There's nothing I can do with that.
18        But this entire time we've been in bankruptcy there
19  has not been one affidavit from anybody from KeyBank stating
20  I have a loan with them.
21        Number two, I did bring that up in the adversary
22  proceedings and it's humanly impossible for him to read over
23  300 pages in the matter of the last hour.  It's impossible.
24  There's a lot of different arguments in there that need to be
25  litigated and set for hearing.

In Re Shane Christopher Buczek - 19-11441

1       And I hope the Court keeps this case and not

2  transfer it to another judge.  I prefer to keep it in front

3  of you, Judge Bucki, if you would be so kind.  I really

4  appreciate that.  I've been -- do enormous amount of work.  I

5  mean, you would think this house was worth at least 13 or 14

6  or $15 million the way KeyBank's -- the way the law firm is

7  acting.

8       Okay, so I'm being sanctioned for sticking up for

9  our only thing our family has left.  I'm lost.  I'm really

10  lost here.  So, it's base -- so we should just live in the

11  woods in a tent somewhere and hang out with the homeless

12  people under a bridge?  Is that what he's trying to say?

13       We know there's no debt.  I know how the system

14  runs, Judge.  I got people in my own family that, that do

15  this for a living.  They monetize these notes.  I know

16  exactly what's going on.  They know it, too, but what they do

17  is they say little things like, oh, oh, he's in default, he

18  didn't respond.

19       Well, guess what?  I did respond to that.  I'm not

20  in default and I made that clear when we first started today.

21  We know they don't have the original note.  We know there's

22  no loan in my name.  The proof of claim clearly states under

23  penalties of perjury, which is addressed in the adversary

24  proceeding with more information regarding that which has not

25  been addressed here in sanctions but they filed a fraudulent

In Re Shane Christopher Buczek - 19-11441

1   proof of claim, a fraudulent notice of mortgage payment and

2   it's almost like nobody can hear me.  And I guess that's the

3   price you pay when you go pro se.  There is no debt at large.

4            Now, getting back to the issue of the bankruptcy,

5   having the thing dismissed, well, we're still appealing that.

6   I'm waiting to find out what happens with Judge Sinatra.  I

7   don't know what's going to happen.  Maybe there is a little

8   bit of debt left.  Maybe I'm 100 percent right.  I don't know

9   right now.  So the dismissal would be premature.  I haven't

10  been able to fully litigate those briefs to remand it back

11  down to the bankruptcy court and sort all this out because

12  right now there's been no true accounting from KeyBank

13  whatsoever.  They just claim they have a note, you owe this

14  much.  They put numbers on a sheet of paper with interest on

15  something they don't even have.

16           And, once again, I want to stress, Judge, that

17  nobody from KeyBank has ever filed an affidavit under the

18  penalties of perjury that I have any type of obligations,

19  contracts, loans, or anything regarding any type of

20  outstanding debt.  Now, of course, I'm appealing that and

21  bringing it back to the bankruptcy court.

22           And now we have an adversary proceeding which we'll

23  address at a later time and I can move forward with subpoenas

24  to address that issue of them establishing the note.  And I

25  will follow the rules because I know the last one I filed was

In Re Shane Christopher Buczek - 19-11441

1   deficient but I will make sure the corrections are ready to

2   go for the adversary proceeding.

3          And another thing, too, Judge, I, you know, I want

4   to bring Willie McCaffrey in.  We've had several affidavits

5   regarding the, you know, you talked about it last year about

6   the UCC 3804, about having a, you know, the bond attached to

7   the lost note activated.

8          Somehow KeyBank still thinks they have the note

9   which they don't.  They never filed no bond.  Nationstar's

10  never filed no bond.  Nationstar's in a complete mess,

11  leaving aside the Rosicki and Rosicki that originally had

12  that loan was indicted for the same thing I've been saying

13  for years -- and I sent everything to the U.S. Attorney's

14  Office, Mr. Kennedy back in 2,000.  It had to be right around

15  2016 it was.  Spring of 2016.  And shortly thereafter, the

16  indictment came down.

17         This is exactly what KeyBank's doing.  They don't

18  have any of the document to prove any type of debt.  In fact,

19  that's why I did the quitclaim because I knew there was

20  nothing.  There was no outstanding obligations and so I just

21  wanted to stress that I do have a due process right to be

22  heard for the adversary proceedings to establish and bring in

23  this original note -- and the accounting, by the way, is a

24  complete mess.

25         We did get a letter, by the way -- I do want to put

In Re Shane Christopher Buczek - 19-11441

1  this on the record.  We did get a letter from David P. Case

2  regarding a possible settlement offer.  Unfortunately, we

3  didn't get that letter until very, very late June.  There's

4  something seriously wrong with the U.S. Mail Service.  I'm

5  sure counsel for the opposing side will agree with me that

6  that letter was sent some time in May.  We never got it till

7  late June, June 20th or 23rd, about a possible settlement

8  agreement.

9          So I want to let you know that was on the table but

10  the letter clearly states it expires on June 1st but there

11  was no way to file a -- any type of a counteroffer because it

12  already expired in his letter.  So the U.S. Mail Service has

13  been not cooperating too well.  Maybe because of the Corona

14  Virus going on and a lot of people being out of work.

15          But, your Honor, all I can do is thank you for

16  being kind to me and listening to me and you know how I feel

17  about everything.  We know there's no outstanding

18  obligations.  They're not a secure party creditor.  They have

19  no proof of anything that they loaned anything to me at all.

20  And this is my bankruptcy and we're in federal court not

21  state court.

22          And I understand that you mentioned to me to go

23  back to state court.  But state court will -- first of all,

24  they won't serve me and I'm not allowed to file anything in

25  the state court so the joinder has been denied and I'm moving

In Re Shane Christopher Buczek - 19-11441

1  forward in bankruptcy court and I'm in front of Judge Sinatra

2  for pending decisions on the briefs and now we have the

3  adversary proceeding.  So I'm not try to eat anybody's time

4  up.  I'm only trying to save the only thing our family has

5  left.

6          **THE COURT:**  All right.

7          Ms. MacDonald, in your oral argument, you note --

8  you did not make reference to the argument that's in your

9  papers about dismissal for failure to submit tax returns.

10  Was that deliberate or --

11          **MR. BUCZEK:**  Oh, yes, you know, your Honor, first

12  of all, I don't have anything, anything to report.  I have

13  no, there's no way, I don't know, I don't have it.  I haven't

14  made any money because I've been working trying to save this

15  property so there's been nothing.  There's no way to even

16  file taxes.  And I'm sure, you know, I'm not sure if I'm even

17  required to file income tax and I'm kind of like nontaxable.

18  I have nothing coming in, no income coming in.  So if, if --

19  I did read it.  But there was no notice given to me by the

20  Trustee, hey, we're going to give you 7 days or 10 days or 20

21  days to get this in.  I don't have anything to report except

22  maybe a big fat zero.  And I clearly laid it out in the in

23  forma pauperis applications of my, my income level.  I don't

24  have anything coming in.  So I mean, what do they want a

25  blank sheet of paper?  With a big fat zero in it?  I don't

Case 1:20-cv-01046-JLS   Document 4   Filed 02/12/21   Page 27 of 39

1  have anything.  So there's really nothing to report on that.

2       **THE COURT:**  All right.

3       **MR. BUCZEK:**  And if the Trustee wants me to do

4  something about that, I will.  But there's -- I don't think

5  there's a requirement.  I couldn't find a requirement.  And I

6  don't have anything, no income coming in so how do you file

7  something you don't have?

8       **THE COURT:**  All right.  All right.  Anyone else

9  want to add anything?

10       **MS. MacDONALD:**  Your Honor, I would just say that

11  if, if Mr. Buczek is not required to file tax returns, that

12  might be a defense to the Trustee's motion to dismiss under

13  521.  However, it, it enhances my argument that the debtor

14  can't propose a feasible plan if he has no income.

15       **THE COURT:**  Yeah.  All right.

16       **MS. MacDONALD:**  And the Chapter 13 is for the -- is

17  for reorganization and addressing debt.  If he has no income

18  to address valid debt, then there's no further purpose served

19  by being here at Chapter 13.

20       **THE COURT:**  All right.

21       **MR. BUCZEK:**  Judge, could I comment on that.  I do

22  have a little bit of money coming in but nothing that is

23  something that's required me to file a 1040.

24       And, you know, I do want to ask you one more

25  question.  I almost forgot about this.  When Mr. Case filed

In Re Shane Christopher Buczek - 19-11441

1  his cross-motions for sanctions, he actually, in Exhibit A,

2  he actually made a copy of the complaint I sent in to the, to

3  the Bar grievancies, I believe that you're supposed to keep

4  that private and confidential.  I don't think that's the

5  proper thing to do, to file whatever I filed to the Bar

6  grievency to put it in the public record.  I do want to make

7  that clear to you.  It's a real minor thing to me.

8         But they keep on claiming that I go to the Consumer

9  Protection Bureau file complaints, nothing's been done.  Oh,

10 something's been done, I can guarantee you that.

11 Unfortunately, they can't act as your attorney and things

12 have been done in small claims.  There was a judge in

13 Rochester that was -- he almost walked across the line and

14 agree with me that you have some very good arguments.  So

15 there was no time wasted in the small claims that I filed way

16 back in 2017 and '18 in Rochester where I sued them in their

17 jurisdiction in small claims.  So, those were dismissed but

18 without prejudice so I want to make that clear.  So, no --

19 there's nothing, you know, they are not doing anything --

20 they are doing something.

21        Unfortunately, like you were saying, Judge, I need

22 to go back to state court.  I think this whole decision, you

23 need to go back to state court.  And I, you know, you might

24 be right.  I know I saw your decision with the Diocese and I

25 read it, clearly read it.  I clearly understand where you're

In Re Shane Christopher Buczek - 19-11441

1 | coming from.

2 | But on the other hand, this is bankruptcy court.  I

3 | have property.  The Trustee never showed up for any of my

4 | stays when they lifted the stay with KeyBank and Nationstar

5 | and you know all the issues with that.  And they were never

6 | there to help me out.  Not once have they ever, you know, put

7 | their hand across and say, okay, let's look into this, not

8 | once.  They're one hundred percent pro creditor, secured

9 | creditors which KeyBank's not.  They do nothing to help us,

10 | the working man, the working people.  And this is the reason

11 | why people get so mad.  They're so upset at what's going on

12 | today, you know, you see all these riots going on.  You see

13 | all these -- I'm not condoning these rights by the way but

14 | people are basically just mad about everything.  The

15 | attorneys, I mean, you ask anybody out in downtown Buffalo:

16 | Do you trust an attorney?  Nine out of ten times you're going

17 | to say absolutely not and they continuously, even in my

18 | bankruptcy, a simple little house in Derby, they can't even

19 | tell the truth.

20 | And you got no one to go to.  What -- you think the

21 | news is going to cover a story on this?  Absolutely not.

22 | They're not going to cover a story on this.  It's very

23 | difficult to get any type of traction but the Consumer

24 | Protection Bureau I've talked to several times.  They see the

25 | issues.  They see what's going on but you need a lot of

In Re Shane Christopher Buczek - 19-11441

1    people to complain before they do anything.  One or two

2    people or ten people complaining about KeyBank is not going

3    to cut it.  But they do make a record of it so I want to make

4    that perfectly clear:  Nothing's been done because a lot of

5    people need to complain.  That's what they gather information

6    and once they have a lot of people -- I'm talking hundreds or

7    maybe even thousands of people -- that complain about the

8    same company, then they'll do it.

9         But what's really awful, Judge, what's really awful

10   is a lot of people are having their houses robbed right

11   underneath their skin and they don't even know what's

12   happening.  So you can't blame the courts.  You can't blame

13   the attorneys.  The people don't even know what's going on.

14        So I don't really know what else to say but

15   regarding taxes.  They -- if they need to be filed, I guess

16   we'll, we'll file what needs to be done.  But right now we

17   got to remember we still have two appeals pending and

18   possibly an adversary proceeding with a possible hearing to

19   be set for the evidentiary hearings.

20        And I just want to make it perfectly clear that I'm

21   not trying to eat up the court's time.  State court will not

22   let me in there and, you know, maybe I got to do some more

23   studying or finding out what I need to do.  But right now I'm

24   in federal court not state court.  And I just want to make

25   one thing clear is that Fein, Such & Crane is, is, you know,

In Re Shane Christopher Buczek - 19-11441

1    been very, very, how do I say it in a diplomatic way very,

2    very, very mean to my mom.  And I'm not going to get into the

3    details because it has nothing to do with this case but I

4    just want to make that on the record, Judge.

5         And I think I said enough for today's hearing.

6         **THE COURT:**  All right.

7         **MR. BUCZEK:**  Thank you.

8         **THE COURT:**  Thank you.  I appreciate everyone's

9    comments and I wanted to give everyone a full opportunity to

10   express those comments.  I think we've done that.

11        We have three motions that still need to be

12   decided.  I've already ruled on one of the motions.

13        But on the motion for sanctions, I'm going to deny

14   that application.  And I make reference in here and

15   incorporate into my comments the decision I rendered several

16   weeks ago denying a stay pending appeal.

17        Fundamentally, what we have here is a foreclosure

18   proceeding that was decided in state court.  Under New York

19   law when a lis pendens is filed -- or sometimes it's called a

20   notice of pendency -- the effect is to bind not only the

21   owner of the property but also anyone that subsequently

22   acquires an interest in the property.  The foreclosure

23   proceeding was commenced against Deborah Buczek when the

24   property was thereafter transferred.  That transfer did not

25   diminish the ruling of the state court but the ruling of the

In Re Shane Christopher Buczek – 19-11441

1  state court became binding on anyone that acquired a

2  subsequent interest in the property.  That decision of the

3  state court is final and is resolved and settles the --

4          **MR. BUCZEK:**  Your Honor --

5          **THE COURT:**  -- the --

6          **MR. BUCZEK:**  Your Honor --

7          **THE COURT:**  No.  It's my turn to speak.

8          **MR. BUCZEK:**  I'm sorry.

9          **THE COURT:**  -- and settles the matter in terms of

10  the KeyBank issue.

11          Having said that -- I say that as preliminary

12  background.  Having said that, the motions for sanctions by

13  Mr. Buczek against Mr. Vilkhu's firm has no validity, no

14  basis and, therefore, that motion is denied.

15          We then have a cross-motion that's been filed

16  looking for sanctions.  I'm going to grant that motion.  The

17  motion asked for sanctions of $715.  I think those are

18  properly and correctly itemized and, therefore, that motion

19  is, that cross-motion of Fein, Such & Crane is granted to the

20  extent of allowing sanctions in the amount of $715.  The

21  balance of the application, I think, will be subsumed in

22  the -- and that was acknowledged by Mr. Vilkhu -- will be

23  resolved by my decision on the Trustee's cross-motion to

24  dismiss.  And I'm going to grant that motion.

25          What we have here -- and one thing that Mr. Buczek

In Re Shane Christopher Buczek - 19-11441

1    did say correctly:  He has no personal liability on any claim

2    to either of the mortgagees.  The consequence is that there

3    is no potential for a deficiency judgment.  The only claim

4    that we have here involves a secured claim against real

5    property.  Stay relief has been granted with respect to both

6    of those mortgagees and as much as stay relief has been

7    granted, there's nothing left here for the Court to resolve

8    or decide.  And I think the case is properly dismissed for

9    that reason.

10          So, I agree with Mr. Buczek that the claim for

11   dismissal under Section 521 for failure to file tax returns

12   would not be applicable in the event that tax returns were

13   not required.  And without deciding whether they are required

14   or not required, I have Mr. Buczek's admission that -- or

15   representation that they're not required.  And, so,

16   therefore, I'm not ruling on the Section 521 component of the

17   Trustee's cross-motion.

18          But I do agree with the Trustee that under Section

19   1307 and, in particular, Subdivision (c)(1), that the case

20   should be dismissed.  (c)(1) allows for dismissal when there

21   is unreasonable delay by the debtor that is prejudicial to

22   creditors.  I view that that is definitely the case here.  We

23   have the interests of the KeyBank and of having been already

24   decided by state court, the proceedings in state, in this

25   court are efforts to delay the rights of KeyBank as

1    previously established in state court and it is prejudicial

2    to the rights of the creditors to a prompt disposition of

3    their claim.

4            I think that there is a grounds to dismiss the case

5    under Section 1301(c)(1) and on that ground, I'm going to

6    grant the Trustee's cross-motion for dismissal and so the

7    case is dismissed.  My ruling is without prejudice to any

8    further rights that may be had in state court.  If state

9    court has imposed sanctions that limit the ability to

10   respond, that's part of the decision of state court.  And I

11   leave that matter to the sound judgment of the judges in

12   State Supreme Court or County Court, as the case may be.

13           So, to summarize, the motion to compel,

14   administration of assets is denied.  The motions for

15   imposition of sanctions against Fein, Such & Crane is denied.

16   The cross-motion of Fein, Such & Crane for sanctions is

17   granted to the extent of imposing sanctions in the amount of

18   $715.  And the Trustee's cross-motion to dismiss is granted.

19   Case is dismissed.  All right.

20           **MS. MacDONALD:**  Thank you, your Honor, should I

21   submit the order dismissing then?

22           **THE COURT:**  Yes, you should.

23           **MS. MacDONALD:**  Okay.

24           **THE COURT:**  All right.

25           **MR. BUCZEK:**  Okay, Judge, can I make a final

In Re Shane Christopher Buczek - 19-11441

1   comment?

2          **THE COURT:**  Go ahead.

3          **MR. BUCZEK:**  Okay.  One thing I failed to address

4   really quick was the arbitration award and, you know, we

5   briefly spoke on that and signatures and everything and the

6   contract itself had the breach (phonetic) clause and I just

7   want to make that perfectly clear on the record that you did

8   see the arbitration award that got recorded?  I'm not sure if

9   you even read the documents I filed because I know it's kind

10  of quite length --

11         **THE COURT:**  I did --

12         **MR. BUCZEK:**  -- quite lengthy.

13         **THE COURT:**  I did read.

14         **MR. BUCZEK:**  Did you read on that at all?

15         **THE COURT:**  I did read the arbitration award and to

16  the extent that -- I am not persuaded as to its validity.  I

17  see no basis for a consensual submission by KeyBank to the

18  arbitration and for that reason -- I gave it full

19  consideration but I find it not valid or -- I find that has

20  no effect on the proceedings before this court.

21         **MR. BUCZEK:**  Okay.  Thanks, Judge, for making that

22  finding.

23         And, lastly, in conclusion is that I need to go

24  back to your claim that I need to go back to state court and

25  file my own, whatever I need to do, I need to file something,

In Re Shane Christopher Buczek – 19-11441

1    maybe a separate case I need to go to state court, completely

2    go to state court.

3             **THE COURT:**  No.  I mean you have the option.  I'm

4    not saying you have to do that but I don't limit or control

5    what you can do in state court.

6             **MR. BUCZEK:**  Okay.  Your Honor, and, lastly, the

7    appeals that are still pending with Judge Sinatra, if that,

8    if one of those cases or both of them do come back, what

9    happens regarding this bankruptcy being dismissed?

10            **THE COURT:**  Well, I'm not sure what, how, how...

11            (WHEREUPON, proceedings ended.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In Re Shane Christopher Buczek – 19-11441

1

2

3

4

5                    *            *            *

6              CERTIFICATE OF TRANSCRIBER

7

8          In accordance with 28, U.S.C., 753(b), I

9    certify that this is a true and correct record of proceedings

10   from the official electronic sound recording of the

11   proceedings held in the United States Bankruptcy Court

12   for the Western District of New York before the

13   Honorable Carl L. Bucki on July 27, 2020.

14

15

16   S/ Diane S. Martens

17   Diane S. Martens
     Transcriber
18

19

20

21

22

23

24

25

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In Re:                                          Case No.: 1−19−11441−CLB
                                                Chapter: 13
        Shane Christopher Buczek
                                                SSN:   xxx−xx−5635

                        Debtor(s)

## NOTICE OF FILING OF TRANSCRIPT AND OF
## DEADLINES RELATED TO RESTRICTION AND REDACTION

    A transcript of the proceeding regarding Motions held on July 27, 2020 was filed on September 18, 2020. The following deadlines apply:

    The parties have until **September 25, 2020** to file with the court a Notice of Intent to Request Redaction of this transcript. The deadline for filing a request for redaction is **October 9, 2020.**

    If a request for redaction is filed, the redacted transcript is due **October 19, 2020.**

    If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is **December 17, 2020.**

    To review the transcript for redaction purposes, you may purchase a copy from the transcriber or you may view the document at the clerk's office public terminal.


Date: September 18, 2020                       Lisa Bertino Beaser
                                               Clerk of Court


Form trscript/Doc 350
www.nywb.uscourts.gov

# Notice Recipients

District/Off: 0209−1            User: admin              Date Created: 9/18/2020
Case: 1−19−11441−CLB           Form ID: trscript        Total: 3

**Recipients of Notice of Electronic Filing:**
tr          Julie Philippi          ecf@buffalo13.com

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          Shane Christopher Buczek          435 Creekside Drive          Suite 200          Amherst, NY 14228
            Vikram Vilkhu, Esq.          28 East Main Street          Rochester, NY 14614

TOTAL: 2